Mr. Brosnahan. If it pleases the Court and Your Honors, I would like to reserve four minutes for rebuttal, if I may. You certainly may do so, Counsel. Just watch the clock. I will, Your Honor. Thank you. If the Court pleases, I have five points. The first point is that this activity by these defendants did not arise from protected speech, and therefore the slap statute was inappropriately applied. Secondly, that the minimal merits standard, which has been repeated over and over again in California cases, was more than met in this case in terms of the evidence that was presented and is now in the record and is before Your Honors. Somewhat daunting task, I think, because there is a full record here of a lot of things, but still, I will cover that. Third, the district court opinion made a mistake, my word, of course, with regard to how one balances the statute of limitations for a fiduciary. A question of California law with longstanding goes all the way back into the 50s. And it's a different rule. And therefore, our likelihood of success, should the Court see fit to send us back so that we may be heard by a jury or a finder of fact, the statute of limitations for a fiduciary is quite, quite different. Thirdly, I'd like to mention the BGA defendants who are there because we are trying to recover the copyrights that were left by Bill Graham to his heirs, including his sons. And finally, a word about the civil litigation privilege that has been raised by one of the defendants. If the Court please, the slap statute has been transformed to some extent from the earlier cases by California decision law. Right. And I know Your Honors had before you the city of Cotati, the city of Alhambra. Hylton, for example, which was decided in 09, it's a good review of cases as to whether or not what an attorney does. And they look at the facts in each case. In this case, there was an assignment made on August the 31st, 1995, never approved by a court, never submitted by a court, and no evidence that anyone intended to submit it to a court, but kept by our view and by a view of the evidence to itself as a semi-secret with regard to what happened. So you're really talking then about Allegation 4? Yes, Your Honor. I am. And there's no answer. I mean, I'm trying to get to where you're going. Yes. Because I look at the allegations and trying to determine from what protected activity it is, it seems to me the assignment really raises in Allegation 4. The assignment, if the Court please, is on August the 31st. Oh, and it is. Okay. Yes, Your Honor. I understand what you said, because I've looked at that pretty carefully. And all I'm trying to do is make sure. I mean, to me, there are allegations here in the motion to strike that I looked at, there are allegations here in the motion to dismiss that I looked at. Yes, Your Honor. So I'm just trying to make sure I'm focusing on those allegations you're really  You are, Your Honor. And we say I might just follow up with a slightly different approach, the same concern. But it seems to me, Mr. Brosnan, you're arguing that it's all or nothing. There are, I suppose in total, 12 allegations. Is it possible that your argument on protected speech would apply perhaps, for example, to the breach of fiduciary duty, to the conversion, to unjust enrichment, whereas on the other hand, it may not apply to some of the other counts, such as aiding and abetting, breach of trust, and so forth? It doesn't apply, if the Court please, to anything. And we get to the question of Groverman, which perplexed me when I was in law school, which was a few years ago, if the Court please. But I think the Groverman argument from the plaintiffs is entitled to some reasonable interpretation, that is, we say. And I also think that in this grouping of evidence, that if we can present to Your Honors, or to the district court for that matter, a Groverman that is actionable, it needs to go forward. And the SLAP statute doesn't speak to the contrary. So the Groverman of it is the assignment. But your argument is that this assignment really controls all 12? Yes. All of them, if the Court please. And I'd like to explain why as we go along. All right. Please do. As we go along. Frankly, I think the Groverman of the case is that defendant's performance, if you will, of his duties as executor. And if we look at the SLAP statute as it is, and to be fair, this is the first time I looked at this SLAP statute and looked at it in a probate proceeding. Yes, sir. I couldn't find any California case that said it doesn't apply. So I looked at made in connection with an issue under consideration or review by a judicial body, seemed to apply, so I had to go there. But if I look at this about defendant's performance of his duties as an executor, and that be the Groverman of the case, then I tried to apply this. What would he do before a judicial body? What did he not do before a judicial body? And I tried to use that standard generally in trying to determine what to do in this case. Would you agree with that? I would agree, if the Court please. The only thing that I, if Your Honor will allow me, there are many, many cases in California on the SLAP statute, and the ones in the last five years, including in the Supreme Court, the last seven years, are not applying it the way they did. And it has to arise from protected speech. A lawyer's speech is representative, in this case, a trustee, a fiduciary. The August 31st document is backdated. I don't remember when in my law practice I learned that backdating a document is a badge of fraud, but I probably read it in the U.S. Supreme Court. It's backdated. Not an active lawyer. Mr. Klainos is trained as a lawyer. Mr. Green is a lawyer. They backdate the document to try to make it look like it has something to do. The probate is closed. It closes on August the 8th. Those are central facts to our case. We see that. It is closed. They never go back under probate code section 880, if I have it right, and try to reopen it. They never acknowledge that in the will it provides that any after-acquired assets of any kind, and that's a factual issue. As we're all in this room, no one knows whether they found it on the 25th of August or whether they found it back in 1991. So we have a situation, and I'll get to that in a minute, on the merits of it, where these cases, City of Cotati, City of Alhambra, and the Hilton cases, none of which are answered by the appellees in their briefs. Very interesting. There's no answer to these cases, which say it must arise from it. Two or three people drawing up a document over there, away from the court, under legal restrictions that provides they have to do what the testator wanted them to do, and they don't do it. It would be ironic if, in a case where there was no disclosure and where fraud is alleged, that somehow that would be protected speech. The California courts, as shown in case after case, Justice Baxter in the Oasis case, is in no mood to say that lawyers who do these kinds of things are protected by the SLAPP statute. They do take it a case at a time. If I may, let me proceed to the question of minimal merits. In one of the briefs, it is suggested that that's not the standard, and they cite the Naval Air case. I find, on a casual look of Naval Air, three times it refers to the minimal merits test, and this circuit has referred to it as the minimal merits test. And why is that? It makes perfect sense to not close the courthouse door to someone who says, I've been defrauded by a fiduciary. Well, but it seems to me that the district court really didn't focus on minimal merits much, but the district court focused on were the defenses to the case. Yes. In other words, I look to try to find out if the district court addressed the sufficiency of claims, which I may have a different idea. I'm sorry I call it something different than you, but I call it the sufficiency of claims. Yes. They didn't really, the district court really didn't talk about that. The district court got to litigation privilege, and the district court got statute of limitations, and the district court got a res judicata, but they didn't really take up the sufficiency of the evidence. They just said these defenses throw the case out. There's no, and there was a balancing, too. I understand. Consistent with what Your Honor said. A district judge, a very distinguished district judge. I'm quite aware of her abilities and scholarship. Well, I'm glad you said that. We all think she's distinguished, but we've got to look at her case. Of course. But on that day, she took the evidence and balanced it, which is prohibited by every statute in California. That is not the point. Well, we're not really talking about her balancing here, really, are we? We're really saying there are certain defenses, and they are affirmative defenses, which would destroy the claim no matter how good they are. It seems to me that was her argument. All right. And let's address that directly. All right. First of all, on the merits, the assignment is backdated. It is, as I say, the probate was closed. Mr. Klainas owns 13% of the company which receives the assigned goods. Mr. Green has been an attorney for Bill Graham. And I'm getting to the defenses. Bill Graham owned the copyrights. Mr. Nimmer, who is the national expert on copyrights, has submitted an affidavit in which he has said these copyrights on Bill Graham's death were owned by Mr. Graham. They went into the estate. Now, in that context, we view some of these defenses. The Bill Graham, it is alleged that Bill Graham worked on these very valuable posters as a personal project. He never conveyed them during any time. Now, in 1991, Mr. Green writes to the lawyer for one of my clients and he says, as far as I can tell, they're owned by the corporation. He never changes that. That's fraud. There's a requirement in California law, which we've put in there, there must be a full and fair disclosure by a trustee. It never happened in this case. At what point? I admit to the Court that this has a bit of a cold case aspect to it, but we live in an age where cold cases are pursued. Why? Because the justice of the matter. Let me talk about the defenses specifically. There is no evidence in this case that a juror would find suitable or sufficient that the assignment was ever sent to any of the interested people. That is, the two trustees and the people who worked with these young people who, when this started, one son was 14 and the other was 23, a young adult. And so there's no evidence. And if this were presented to a jury and everybody in this room would agree their Mr. Feldman says, I never saw, I have no memory of ever seeing or receiving the assignment. When Mr. Green sends him some information about a particular agreement, he sends him excerpts at a time in 97 when if he knew that Mr. Feldman had the assignment, he wouldn't have to send him excerpts at all. These are inferences that deserve minimal merit analysis. These are inferences that are worth submitting to a court. And they were given short shrift below. But your clients did receive, as I understand it, a section 1318. Receiving that section 318, I guess the argument is that's enough. There's some evidence, and let me proceed to my third point. There's some evidence that 3.18 was received, but no evidence that the listing attached to that section was ever sent to Mr. Feldman. And when it came out of New York City, he's not on the mailing list. So the documentary evidence supports the idea that Mr. Feldman never get it. Now, the statute of limitations, the defense of statute, let me at least remark in passing, there's no defense to the merits of this fraud case. That's where we are as of this morning. But let me at least mention the statute of limitations issue in this case because the California law is very clear, as I say, and when a fiduciary does something, he owes every day, all day, a continuing. He owes it to today. Until the briefs were here, there's been no full disclosure by a fiduciary under California law. The courts in California, and this is a California law matter and I suspect elsewhere, would look very dimly on that. What does that mean? Our chances of success are very good. If the defendants would even want a trial on statute of limitations, we would have a very good chance of succeeding in that trial. So now let me quickly mention BGA. They have no right. If I could. Yes, Your Honor. Let me back up just a little bit. Sure. What is your best case for the idea that an executive's activities after probate is closed affect this petition or don't? I think the case is that when a final order is prepared. Well, I understand what happened in this particular case. Yes, Your Honor. I'm just trying to think about, I mean, to me, the big issue in this particular case is what do his activities after probate, how should I really look at those as it relates to a judicial proceeding? Yes, Your Honor. And let me try to meet that. I think that the cases in California deal with what a lawyer does. There's two or three of them. We've cited them to the court that deal with the question, a lawyer out there doing something. In one of the cases, he was getting some evidence he was going to use it in court, but he never presented it to court. California court says, no, that's not legal activity. He's just out there doing it. And so the line in California under the California cases is whether it was really submitted to the court. Here we have a situation in which because of what they did, backdating it, keeping it to themselves. Well, the backdating it is what it is. The problem that I have is not with the backdating. The backdating was just to get it back before the probate had closed, and we know it wasn't. Right. So now we're really focusing on, does the closing of the probate end the activity that I need to look at here? It does. And what's the best case for that? That's what I'm really getting at. Well, the best case is. I mean, I looked for quite a few, and I couldn't find any. Well, the best case would be in the probate court, the effect of a final order. And there's a probate code section, which I'm pretty sure is in our document, which deals with the need to reopen. That is to say, it's closed. It's like any legal matter. Everybody goes away unless there's some need to come. I realize I'm in my rebuttal time, but unless nobody comes back. You're down to about a minute, Mr. Bresnik. I understand that, Your Honor. All right. There's no civil privilege, civil litigation privilege for a document in California that's never filed with any court. And so I'll say that. And with BGA, we simply assert, as I sit down, they never got good title to this. They hired Mr. Klainos. In terms of succeeding in the case, they hired Mr. Klainos as a consultant, and they had a long time to examine the facts of this case. They have expert lawyers. You're going to hear from one of them this morning. He's a copyright lawyer. Of course, these posters are very valuable. Thank you, Your Honor. Thank you, Mr. Bresnik. We'll hear from the other side. Good morning, Your Honors. Nancy Tompkins representing Nicholas Klainos. I'll be sharing our 20 minutes this morning. I'll take 7 minutes. I'll cede the podium to my colleague, Mr. Falk, who's representing the Green firm, and then to Tom Lane, who's representing the BGA defendants. Thank you. May it please the Court. First, I have to address this issue of the assignment, Your Honors. It's really a tempest in a teapot. If I can make an analogy, I — Judge Smith, you want to sell me your house. You are concerned that you should get fair value for your house. And I — and I step out of the picture saying, of course, I want the lowest price. I will not tell you how much you should sell your house for. We discuss it for three or four years. You have an independent appraiser. Your sister brings in her own independent appraiser to make sure you are getting fair value. We finally agree upon a price. We enter into a contract saying that you will sell me your house for a million dollars. I give you a million dollars. Three months later, you realize that you never actually transferred title to your house to me. Does that mean that you still own your house? Does that mean that I still owe you money for your house and that I haven't paid you fair value? It does not. The 1995 assignment was this ministerial, oh, gee, after all we went through to buy the corporate assets, after everything the key employees went through to buy all of these corporate assets from the heirs, shoot, you know, we discover we never actually transferred title to these crucial assets, the copyrights and so forth. And so let's do this assignment now to make it tidy so that the purchase, so that the sellers, rather, that would be the heirs, don't get sued for retaining title to assets that they just collected several million dollars for selling. That's this assignment is absolutely innocent and I would say absolutely protected under the statute. Judge Smith. It certainly is not conduct, or excuse me, it certainly isn't in my mind a First Amendment protection if it's only conduct. Wouldn't you agree with that? What I would say, Your Honor, is that under the statute it is absolutely in connection with the sale or in furtherance of that sale. Did the court approve the sale? The court absolutely approved the sale. The court, it was the court that. Well, the court allowed the shares to be distributed outside of the estate, but it didn't have anything to do with the sale. Oh, I believe so. I believe it oversaw the sale from start to finish, Your Honor. It was the court that urged Mr. Klainos that this sale would be necessary to preserve the assets and to keep the squabbling to a minimum. It was they were on the verge of doing the sale, and then some of Bill Graham's sisters, as I understand it, began to complain and become suspicious, and at that point, Mr. Klainos withdrew his petition to approve the sale and said, look, I'm just going to distribute these shares of the company to each of the heirs, and they can come to us one by one, if they wish, and sell for what price they think is fair. And that is how the sale was ultimately executed, piece by piece. So what you're telling me is the assignment was prepared after the probate court had already issued the order of distribution. That's correct, Your Honor. But the very fact that the shares were distributed in the probate court and then the What case is it that suggests that activities after the close of the probate could be undertaken in connection with an issue in consideration by the Court? Your Honor, I have to leave that to my colleague, Mr. Faulk, to tell you. My understanding is that there are cases that say the executor's duty continues on and on after probate closes. Counsel, you heard Mr. Brosnahan urge that none of these counts involve protected activity. Certainly, some of those might not. For example, the first claim, the breach of fiduciary duty, the conversion claim against Mr. Klainos, the unjust enrichment claim, why aren't they not protected property? Well, what I think, Your Honor, that the – there can be no doubt that the anti-SLAPP statute protects people who go into court to petition for redress. That's all Mr. Klainos was doing here. He was not just in court petitioning for his own interests. He was actually there executing a civic duty to assist the court in seeing to conclusion the probate of this very complex estate. He – and California law is very clear that what you do, you don't focus on how the plaintiffs have styled their complaint. You focus on what was the underlying activity. And if you look at all of these claims, it's absolutely clear that all of them have to do with Mr. Klainos, in his statements to the court, he understated the value of the estate. He lied about the extent of the assets. He – everything, everything, everything they are claiming has to do with nothing except what – Well, what about the ninth cause of action, the unjust enrichment? How can that arise from protected activity? That's a fair question, Your Honor. Well, that's why I asked it. Oh, my goodness. I'm down to one minute. May I jump to the merits, Your Honor? Well, as long as you answer my question, unless you prefer not to. I don't think unjust enrichment is an independent cause of action, actually, in California. And jumping to the – It's the ninth cause of action listed in the complaint, is it not? Yes, it is. And if we were to be persuaded that that particular cause is not protected activity, we'd have to reverse, wouldn't we, and remand for whatever? Perhaps as to that single cause of action, Your Honor. May I – I have to jump to the merits, Your Honor. You may do so. Thank you. I want to say that while plaintiff's characterization of all of this conduct is very colorful, the statute is absolutely clear that you must focus on the underlying activity. And that activity may be protected speech even if it is bad. The question whether it is bad is a prong to question when you are looking at the merits of the claim. So let's talk about the merits, Your Honor. Plaintiffs say they were damaged. Damage is an element of each of the causes of action they allege against Mr. Klainos. Let's consider the merits. As you consider this argument on the merits, are you really considering the first prong about whether you've met the first prong of the slap statute, or are you considering the second prong? I'm going to the second prong. Thank you, Your Honor. As I understand the Court, she didn't even consider the second prong, really, the sufficiency of the evidence. She went to three defenses. That's correct, Your Honor. And so it seems to me that I don't really have to get into the second prong. I need to look at the defenses she suggested. Well, I would say, Your Honor, I think that all of the defenses she mentioned, the privileges, the statute of limitations are absolutely ironclad. But I think, I don't think the Court can appreciate how reckless these allegations are without actually looking at the unreachable merits. Well, if that's really your argument, why don't I just say, well, frankly, litigation privilege doesn't make it, statute of limitations privilege doesn't make it on some instance, and res judicata doesn't. So please, Madam District Judge, consider the second prong. I don't know that why, on appeal, I should really consider the second prong. What's your best case for that? I mean, I don't think that's my job. Having been in the district judge's chair once myself, I'd be a little mad if somebody told me what I was supposed to do when I didn't consider it. Well, fair enough, Your Honor. As to at least some of these claims, she may have to go to the second prong, is what is what I'm saying. And that's what we're really looking at, which one she should. All right. And that's why my colleague has tried to suggest, look at claim one, look at claim four, look at claim nine. All three of those must be some concern to him. That's why I was some surprised you said, well, I don't want to answer that question. I want to make the argument on what I want to make about. Because to be fair, I don't think the district judge even talked about what you want to give his argument about. That's correct, Your Honor. Okay. Thank you, counsel. I think your co-counsel is chomping at the bit. Thank you, Your Honor. I was at least. Please introduce yourself for the record. I beg your pardon. Jerome Falk. I'm here representing the Green Law Firm and Mr. Green and the Green Defendants. I listened very carefully to Mr. Brosnan, who really didn't speak about my clients. He talked about fiduciary duties, but they did not owe a fiduciary duty to these plaintiffs. They were counsel for the executor. Now, the discussion was largely focused on the so-called prong one of SLAPP analysis. And I want to point out that the claims against the Green parties were hugely centered on protected activities. And we list a series of bullets on pages 13 and 14 of our red brief. And those are claims of – based on filings, statements made to the court, statements made to counsel for the beneficiaries in connection with the court proceedings. These are – these are the gravamen – these are the things they were said to have done wrong, made erroneous filings, erroneous representations. So whatever you – Well, they do make one claim about conversion of intellectual property on the Green Defendants assisting with the preparation of the assignment. Yes. And with respect to the assignment, we address on pages 29 to 32 of our brief why the assignment is also protected conduct. It was in furtherance of a determination that Mr. Green made in 1991 – this is the undisputed evidence – that he determined in 1991 that the copyrights were property of the – of the corporation, and so advised his client. And the – that determination was necessary in order to make the probate, because you have to – as part of the filings, you have to determine where the assets are owned. And this assignment was merely in furtherance of the distribution that had been made in accordance with the probate court's orders and – and the determination that he had made in 1991. So it's all of a piece. But even if the – but even if you disagree with me in your ultimate conclusions about this case, we also made a motion to dismiss, and because of the very possibility that some piece of this case would be outside of the SLAPP statute. So we combined the motion to strike with a motion to dismiss. So that motion to dismiss is an alternative ground for affirmance of the judgment. And the issues that go to the merits, the so-called prong two – and by the way, prong two doesn't just include the factual merits, but also the legal defenses. That's part of a prong two analysis. So if you disagree with us about – about the applicability of the SLAPP statute, and I really don't think we're wrong about it, because the – because of these points that are on pages 13 and 14 are agreed. When you look at them, that's really the heart of the case. But if you disagree, then you should affirm on the ground that the motion to dismiss should have been granted because the statute of limitations issue on which this case should be decided is reachable from the face of the complaint. But the statute of limitations I want to talk about is the statute of limitations that's applicable to claims against lawyers, Code of Civil Procedures, section 340.6, because it avoids the issue of what Mr. Feldman knew or what he didn't know. It's a four-year statute, and it's an absolute bar for all claims other than actual fraud, and – and it – it has nothing to do with inquiry notice or discovery or any of those complications. That statute ran years ago, and it's – it covers every claim in the case, aiding and abetting, conversion, all of that is barred against the lawyers. The only claim that survives is a claim of actual fraud. Now, the only actual fraud claim asserted against the lawyers is this one sentence that Mr. Brosnahan paraphrased for you. As best I can tell, the archives are owned by the companies. That's in a 1991 letter from Mr. Green to Mr. Feldman, who was the lawyer for the plaintiffs. Now, that fails on multiple grounds on the merits. First, it wasn't fraudulent. It wasn't false. It was a statement of opinion. As best I can tell, the archives are owned by the companies. That statement has never been false, but it can't be, because it's a statement of opinion. It's a non-actionable statement of opinion. Secondly, it's clearly a litigation privilege-protected document. It's a communication about what are the assets in the pending probate from one lawyer to the other. If you disagree with that, you go to court. So that was a communication in connection with the probate that is protected by the litigation privilege. There's no evidence of scienter, no evidence that Mr. Green didn't believe it. There's no evidence of reliance. And how could there be? Would any lawyer – Mr. Feldman is a good lawyer. Would Mr. Feldman ever say, well, I got this one sentence and I stopped doing my due diligence and stopped representing my clients? Of course not. And he didn't say any such thing. And since there was no evidence of reliance, for sure there's no evidence of injury.  And so there's a guard claim in the case against the lawyers. The rest of it is covered in the briefs. And so I just want to end with what I think is really the most important thing of all. And this is before you because although the district court didn't reach the factual merits, it's an alternative – it was fully briefed and it's an alternative ground for affirmance. And therefore, I should undertake it without letting the district court look at it? Well, Your Honor, that's a matter of your discretion. But I – what I want to say is important, and I'm going to just take a minute to say it. This case was filed in total disregard of all Rule 11 standards. There never was a bit of evidence. This so-called backdating, look at the document. It's notarized on the date it was signed. There was no backdating. What occurred was a document that was given an effective date of an earlier time, but it was signed on the day that it's notarized. So there's no backdating. There's no badge of fraud. Mr. Brosnahan knows better than to make a badge of fraud out of a document that is notarized accurately. So this case was filed with sensational allegations of a secret warehouse with 100 complete sets of valuable rock posters. And our motion to dismiss said there's no truth to that. And what did we get back? Nothing. There never has been any evidence of a secret warehouse. There never was any evidence of 100 complete sets of posters. There never was any evidence of wrongdoing by the Green firm. They gave an opinion based on an investigation that these posters and the copyrights were obtained by hiring artists at company expense, that the posters were produced at company expense, used in the company's business, and maintained at the company. And that's the evidence. That's the only evidence. So these claims of wrongdoing by lawyers of good reputation acquired over decades were besmirched by a pleading that never had any evidence to begin with. And that's wrong. And I hope the Court will say so in its opinion. Thank you, Counsel. Good morning, members of the Court. Thomas Patrick Lane from the law firm of Winston & Strawn on behalf of Bill Graham Archives, LLC, Norton, LLC, and Mr. William Sagan. We haven't talked very much about BGA. We haven't, Judge. And I think there's a reason for that. And the reason I think it is is that we shouldn't be in this lawsuit. And I think Judge Wilken recognized that. You know, the only two things you heard from Appellant this morning about BGA was that we allegedly hired Mr. Planos as an expert. My response to that is, so what? And that I'm a copyright lawyer. I will agree with that allegation. I am. But that has nothing to do with this litigation. And we find ourselves here, four transactions removed from the original complaint and four owners down the line from the original sale of copyrights. You heard Appellant, I think, admit today that the gravamen of this case involves the duties of the executor. I would agree with that. It certainly does not involve the conduct of my client. And they have not properly pled any allegation with respect to the alleged conduct of my client. You also heard the Appellant admit today that this was a bit of a cold case. He said that it had a cold case aspect to it. Now, Judge Wilken did not need to reach that with respect to her decision related to my clients. But I would submit to the Court that, in fact, it's far more than a cold case. This case has been in the freezer since 1995. Thank you very much, Counsel. Your time has expired. Thank you. If the Court please, as to BGA, they have no title to the copyrights, which rightfully should have been in the estate and should have passed to the heirs, including my two clients, who are the sons. A tempest in a teapot it is not when two sons seek to recover that which their father left to them in his will. And those materials are emblematic of a time which is somewhat past, in the early 70s, which this city saw. It is no minor matter. This fraud is evidenced by, among other things, in terms of our likelihood of success, by page 190 in the record, the day before Mr. Green writes a letter to Mr. Feldman and says, as far as I can tell, the corporation owns these assets, he makes a note in which he says, these are in Bill Graham's name. All right. Thank you. If the Court please. I have a couple of minutes. No, no, I'm sorry. Okay, Your Honor. Our clock keeps counting, and unfortunately it doesn't reveal the fact that now we're into overtime. Yes, Your Honor. Thank you. But we appreciate your argument. I appreciate it. And your briefs, the briefs of all parties, very, very helpful in this very complex case. It's always a privilege to be in this Court. Thank you very much. Thank you. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Smith